Filed 7/11/23  Andrew R. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANDREW R.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Real Party in Interest. | F086163<br><br>(Super. Ct. No. JD143673-00)<br><br><br>**OPINION** |

### THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Susan M. Gill, Judge, and Lorna H. Brumfield, Judge.  (Retired Judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)†

Law Office of Christopher L. Stahnke and Christopher Lee Stahnke, for Petitioner.

No appearance for Respondent.

---

\*      Before Hill, P. J., Smith, J. and Snauffer, J.

†      Judge Gill presided over the detention hearing; Judge Brumfield presided over the dispositional hearing.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

Petitioner Andrew R. seeks an extraordinary writ from the juvenile court's dispositional orders issued on April 21, 2023, denying him reunification services under Welfare and Institutions Code[1] section 361.5, subdivision (a) and setting a section 366.26 hearing. (See Cal. Rules of Court, rules 8.450–8.452.) Section 361.5, subdivision (a) applies to biological fathers and allows the court to deny reunification services to such fathers if it finds services will not benefit the child. Petitioner contends the court elevated his paternity status to presumed father under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 823 (*Kelsey S.*) at the detention hearing on August 19, 2022, which entitled him to reunification services under the same statute, but nevertheless found in error he was not a *Kelsey S.* father at the April 21, 2023 dispositional hearing. Real party in interest, the Kern County Department of Human Services (department), concedes the error. We accept the concession and grant the petition.

## PROCEDURAL HISTORY

Petitioner is the biological father of now 11-month-old Baby Girl K. (child). When K.K. (mother) gave birth, she did not inform petitioner of the birth and subsequently safely surrendered the child. As soon as mother informed petitioner of the child's birth, petitioner sought to initiate and maintain a relationship with the child, held the child out as his own child, and sought reunification services and custody placement consideration from the superior court.

Petitioner has a criminal record, which includes convictions for felony taking of a vehicle without the owner's consent, multiple felony probation violations, misdemeanor

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

drug possession, and misdemeanor burglary.  Petitioner and mother were in a romantic relationship at various times during the year prior to the child's birth, but were not together at the time of her birth.  The couple has an alleged history of domestic violence.  For example, mother claimed that petitioner entered her home without her permission when she was pregnant.  According to mother, petitioner punched a hole in the door, removed the shower rod and broke it in half, exposing a jagged edge, choked mother, and threated to kill mother with the jagged rod.

While mother was pregnant, petitioner purchased clothing, diapers, and other items for the child.  Before the birth, mother told petitioner she would alert him when she was going into labor so that petitioner could be present for the birth.  However, mother did not inform petitioner of her labor and therefore he was not present for the birth.  Mother safely surrendered the child two days later.  The child was placed with her maternal aunt shortly after the safe surrender.

Two days after the birth, mother informed petitioner she had given birth to the child and had surrendered her.  Petitioner told mother that he wanted to reclaim the child.  Petitioner then went to the hospital with mother and located the child.  Petitioner acquired a crib and additional baby necessities, and placed all items in his mother's home, where he was living at the time.  Petitioner also told his family and friends that he is the father.

In light of the safe surrender, dependency proceedings were initiated by the department through the filing of a section 300, subdivision (g) petition.  The juvenile court ordered the child detained during the initial detention hearing on the petition.

Mother did not appear at the continued detention hearing on August 9, 2022, presided over by Judge Susan M. Gill.  Petitioner testified as to his efforts to build a relationship with the child, to gather all the necessities for her, and to make his home suitable for her.  Petitioner sought to be elevated to *Kelsey S.* status.  The court stated, "this does seem to be kind of a classic *Kelsey S.* situation."  However, the juvenile court denied his request, finding that because there was not yet a finding that he was the

3

biological father, he could not be elevated to *Kelsey S.* Accordingly, the court ordered DNA testing for petitioner.

At the continued detention hearing on August 19, 2022, mother's counsel proffered that had mother been present, she would have testified that petitioner is the biological father. With that, the juvenile court found petitioner to be the biological father. Petitioner's counsel again sought to have petitioner elevated to *Kelsey S.* status. The court stated: "[It sounds] like if he's found to be bio based on this, he could also be *Kelsey S.*" The court ultimately found that petitioner is "the biological father and the *Kelsey S.* father … [and] he's entitled to visitation and placement consideration." The court did not order release of the child to petitioner, but did order supervised two-hour visits twice weekly. The court did not state specifically what reunification services were to be provided to petitioner. On the amended section 300, subdivision (b) petition, in the "father" section, the court checked the "biological" box, handwrote and initialed "& Kelsey S. 8/19/2022," and crossed out "alleged." The court also crossed out the word "alleged" twice in the department's supplemental report, leaving only "father" to describe petitioner in the body of the report. The minute order refers to petitioner as the biological father only.

The record does not indicate that petitioner started to receive any reunification services beyond supervised visitation after the August 19, 2022 hearing. On August 31, 2022, the department requested an ex parte hearing to seek the court to order petitioner's visits be conducted virtually because it believed in-person visits would endanger the child. It was alleged that petitioner sent death threats to mother over text, shot a firearm into her home, and threatened to have a "shootout" with law enforcement at his next in-person visit with the child. Attached to the request were copies of text messages apparently sent by petitioner to mother to that effect.

4

By the next hearing on September 1, 2022, which was ex parte, petitioner had been arrested and was in custody for a domestic violence incident involving mother.[2] Petitioner allegedly threatened to nail the doors of mother's home shut, light the house on fire, and kill mother. In light of his incarceration, the juvenile court ordered petitioner to have 15-minute virtual visits with the child twice a week only. Over the next seven months, the dispositional hearing was continued multiple times for various reasons.

On April 21, 2023, Judge Lorna H. Brumfield presided over the dispositional hearing. Petitioner testified as to mother's efforts to thwart petitioner from forming a relationship with the child, such as failing to inform him of her labor and safely surrendering the child shortly after the birth. Petitioner stated that he had been present for all court hearings on the section 300 petition, had asserted his desire to be the presumed father, and sought custody. Petitioner was enrolled in substance abuse and anger management classes and was on the wait list for parenting classes in jail. He participated in visitation before being arrested and continued to have virtual visitation while in custody. He planned to live with the child at his parents' house upon his release. Petitioner's mother had applied for placement of the child in her home.

Apparently, petitioner's counsel did not remember that petitioner was elevated to *Kelsey S*. status at the August 19, 2022 hearing, nor that reunification services were ordered for petitioner. In light of this, petitioner's counsel believed in error that petitioner's status was biological father and requested that petitioner's status be elevated to *Kelsey S*., arguing that petitioner attempted to act as a parent to the child but was prevented from doing so by mother. Petitioner requested that reunification services be ordered. The department opposed petitioner's request for reunification services, arguing services "would not benefit the child."

---

[2]     It appears petitioner remains in custody and is currently awaiting trial in Kern County.

Judge Brumfield then questioned all counsel whether Judge Gill had already decided petitioner was not a *Kelsey S.* father at the August 19, 2022 hearing. Judge Brumfield stated: "So you're telling me that Judge Gill has already decided that he is not a *Kelsey S.* father?" All counsel erroneously agreed that Judge Gill had denied petitioner's request to be elevated to *Kelsey S.* status. Judge Brumfield stated she would not reconsider another judge's order.

Judge Brumfield then found that family reunification services should not be provided to petitioner because such services would not benefit the child. The court noted it was very concerned with petitioner's history of domestic violence against mother and unknown date of release from custody. The court concluded services would not benefit the child based on the evidence of domestic violence and petitioner's pending criminal trial. The court stated, "[s]o I'm going to deny the request for those reasons, as well as the reasons—all of the reasons, some of which I articulated, some of which I did not, and reports that I read that behavior—his alleged behavior and pattern of conduct is of great concern to me." The court ordered monthly one-hour supervised virtual visitation for petitioner. A section 366.26 hearing was scheduled for August 17, 2023.

### DISCUSSION

A man's paternity status is critical in juvenile dependency proceedings because it determines his rights to the child. (*In re O. S.* (2002) 102 Cal.App.4th 1402, 1410.) Only presumed fathers enjoy the full array of parental rights. (*Ibid.*) A presumed father is entitled to custody under section 361.2 and reunification services under section 361.5, subdivision (a). (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451.) A biological father, on the other hand, has no parental rights to custody or services, but may be offered such services if the court finds it would benefit the child. (§ 361.5, subd. (a).)

There is another paternal status, relevant here, under *Kelsey S.* "*Kelsey S.*" refers to an unwed biological father who does not satisfy the paternity presumptions under

6

Family Code section 7611,[3] but who nevertheless promptly came forward after learning of the pregnancy and demonstrated a full commitment to his parental responsibilities. (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.)  Such a man has established paternity rights that are constitutionally protected.  (*Ibid.*)  He is entitled to presumed father status, reunification services, and visitation.  (*In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, 1118.)  The juvenile court found that petitioner qualified as a *Kelsey S.* father.

In its response, the department concedes that the juvenile court erred on April 21, 2023, when it did not recognize petitioner as a *Kelsey S.* father, in contravention of the court's August 19, 2022 *Kelsey S.* finding.  Both petitioner and real party in interest request that this case be remanded to the court to evaluate whether reunification services should be granted to petitioner as a *Kelsey S.* father.

We agree with the parties.  The juvenile court erred during the April 21, 2023 hearing when it did not recognize petitioner as the *Kelsey S.* father, as found by the court on August 19, 2022.  Accordingly, we remand this matter to the juvenile court to hold a new dispositional hearing to determine whether, as a *Kelsey S.* father, petitioner should be provided reunification services under section 361.5, subdivision (a) or whether one of the bypass provisions under section 361.5, subdivision (e) apply.  This court expresses no opinion as to the proper outcome of this new dispositional hearing.

### DISPOSITION

The petition for extraordinary writ is granted.  Let an extraordinary writ issue, directing the juvenile court to vacate its orders entered on April 21, 2023, denying petitioner reunification services and setting a section 366.26 hearing.  The court is directed to hold a new dispositional hearing to determine whether, as a *Kelsey S.* father,

---

**3**      The Family Code presumptions generally concern children born during an attempted marriage, within a certain number of days of a terminated marriage, or, more commonly, cases where a man receives the child into his home and openly holds the child out as his own.  (Fam. Code, § 7611, subds. (a)-(e).)

petitioner should be provided reunification services under section 361.5, subdivision (a) or whether one of the bypass provisions under section 361.5, subdivision (e) apply. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.456(h) & 8.490(b)(2)(A).)